UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EDWIN CALLIGAN, | ) |
| Petitioner, | ) |
| vs. | ) CAUSE NO. 3:05-CV-0737 PS |
| EDWIN G. BUSS, | ) |
| Respondent. | ) |

## **OPINION AND ORDER**

Edwin Calligan and Geoffrey Ward were like the Hatfields and the McCoys. They just could not get along. Their rivalry culminated in Calligan earning an extended prison term after he was found guilty of shooting Ward nine times. Calligan, a *pro se* prisoner, filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, seeking to challenge his 1999 convictions for attempted murder, felony criminal recklessness, and resisting law enforcement. In reviewing a petition for writ of habeas corpus filed pursuant to § 2254, this Court must presume the facts set forth by the state court are correct. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

According to the facts set forth by the Indiana Court of Appeals in its decision on his direct appeal, in 1996, Calligan allegedly shot Geoffrey Ward. The state charged Calligan with the shooting, but then dismissed the charges. In December 1998, Ward saw Calligan in a nightclub and heard Calligan admit

to his friends that he had shot Ward. Ward wanted revenge, so he left the club before Calligan. When Calligan exited the club, Ward intentionally hit him with his car. Here's how the Indiana Court of Appeals described what happened a few weeks later:

> On January 2, 1999, while Ward was walking in 1900 block of East Paulding in Fort Wayne, he heard a car pull up behind him. Ward turned and saw Calligan driving the vehicle. Ward told Calligan that if Calligan wanted to shoot, he could shoot, but that Ward would not be shooting. Ward then turned and walked away from Calligan's car. Calligan drove away, turned his car around and drove back toward Ward. When Calligan reached Ward, Calligan pulled out a gun and started shooting at Ward. Three or four bullets hit Ward before he was able to move. Ward turned and ran, and Calligan pursued him and continued to shoot at him.
>
> Bruce Prosser and his wife, who live at 2017 East Paulding, were watching television in their living room at approximately 9:00 p.m. when they heard gunshots. Immediately thereafter, a bullet "came through [their] dining room." (R. 265), Plaster was "flying all over" and Prosser "grabbed his [wife] and pulled her to the floor, and shut the lights off and called 911." (R. 265-66). The bullet entered the house 10 to 15 feet from where the Prossers were sitting, hit a built-in-cabinet on the other side of the room, and "fell down into the wall." (R. 416). The bullet was "not retrievable" without dismantling the Prosser's house, and ballistics tests could not be performed on it. (R. 416).
>
> In the meantime, after having been shot several times, Ward kneeled on the ground and pulled out a gun carried in a holster on his waist. As Ward was attempting to load the gun, Calligan approached. At that moment, another car drove by, and Calligan drove away. As Ward attempted to get to a pay phone to telephone for help, a woman who lived at 1917 East Paulding and who had heard the gunshots, yelled out her front door and asked Ward if he needed help. He asked her to call 911, and she invited him into her house.

*Calligan v. State,* Cause No. 02-A03-9905-CR-176 at *2-3 (Ind. Ct. App. 2000).

Ward told a Fort Wayne Police Officer that Calligan had shot him. The officer found Ward's gun and noticed that no bullets had been cocked into the chamber. At the hospital, it was determined that Ward had been hit by nine bullets, and was severely injured. *Id.* at 3-4.

The State charged Calligan with attempted murder, criminal recklessness for firing the bullet that entered the Prossers' home, and for resisting law enforcement. At trial, the mother of Calligan's three children testified that in December 1998, Calligan had threatened to kill Ward the next time he saw him. Calligan and his current girlfriend testified that Calligan had fired in self-defense. According to their testimony, Ward approached Calligan's car with a drawn gun and "Calligan responded by pulling out his gun and shooting at Ward." *Calligan v. State,* Cause No. 02-A03-9905-CR-176 at *4.

The jury convicted Calligan of all counts. On direct appeal, Calligan argued sufficiency of the evidence, that the court should not have allowed Ward to testify that he believed Calligan had shot him in 1996 and that he had hit Calligan with his car, and that his trial counsel was ineffective. The Indiana Court of Appeals affirmed the conviction and the Indiana Supreme Court denied transfer. Calligan filed a petition for post-conviction relief arguing that his appellate counsel was ineffective. The Indiana Court of Appeals affirmed the trial court's denial of post-conviction relief, and the Supreme Court of Indiana summarily denied transfer.

In his petition for writ of habeas corpus, Calligan asserts that his trial and appellate counsel were ineffective. He alleges that his trial counsel should

have objected to the admission of evidence that Ward believed Calligan had shot him in 1996 and that Ward had struck Calligan with his vehicle. He asserts that his appellate counsel failed to sufficiently argue trial counsel's ineffectiveness on direct appeal.

To support a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate: (1) that counsel's performance was deficient; and (2) that absent the deficient performance, there exists a reasonable probability of a different outcome. *Strickland v. Washington*, 466 U.S. 668 (1984). Ineffectiveness of appellate counsel claims are also reviewed under the *Strickland* standard. *See Sanders v. Cotton*, 398 F.3d 572 (7th Cirl 2005).

To satisfy the first prong of the *Strickland* test, a petitioner must show that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. *Williams v. Taylor*, 592 U.S. 362, 390 (2000). A reviewing court must afford a strong presumption that a habeas petitioner's counsel's conduct fell within a wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 669. A habeas petitioner claiming ineffective assistance of counsel "bears a heavy burden" of showing that his counsel's performance was deficient and that the counsel's alleged errors rendered the result of the proceeding "fundamentally unfair or unreliable." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir.), *cert. denied* 519 U.S. 951 (1996).

This Court may not grant a petition for writ of habeas corpus unless the state courts adjudicated a claim contrary to established interpretation of

4

federal law or the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In reviewing a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, this court must presume that the facts set forth by the state court are correct. *Sumner v. Mata*, 449 U.S. at 547. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Indiana Court of Appeals determined that Mr. Calligan's trial counsel was not ineffective in not objecting to the admission of evidence that Ward believed Calligan had shot him in 1996 and that Ward had struck Calligan with his vehicle. The court of appeals concluded that this evidence was admissible because it was probative of Calligan's motive for shooting Ward. *Calligan v. State,* Cause No. 02-A03-9905-CR-176 at *8. The Indiana Court of Appeals correctly concluded that because this evidence was admissible, Calligan's trial counsel was not deficient for failing to make a futile objection to its admission.

Calligan's appellate counsel raised the issue of effectiveness of trial counsel on direct appeal, but Calligan asserts that he should have raised several arguments about his trial counsel in addition to those that he did raise. The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Sanders v. Cotton,* 398 F.3d. at 585. Prejudice is established if the

5

issue not raised "may have resulted in a reversal of the conviction or an order for a new trial." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (quotation marks omitted).

Calligan asserts that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failure to utilize medical records, allegedly failing to communicate a plea agreement to Calligan, not objecting to the prosecutor's statements about veracity of witnesses, failing to tender a subjective self-defense instruction, failing to object to the attempted murder instruction, failing to impeach Ward with his criminal history, and not calling Willie Perry as a witness.

The Indiana Court of Appeals addressed the claims of ineffectiveness of appellate counsel in its opinion, and concluded that Calligan's appellate counsel was not ineffective. In its opinion, the Indiana Court of Appeals correctly applied established federal law in adjudicating Calligan's ineffective assistance of counsel claims, and did not make an unreasonable determination of the facts in light of the facts contained in the state court record. Accordingly, the court must deny Calligan relief on his ineffective assistance of counsel claims.

Calligan's submissions do not present clear and convincing evidence rebutting the presumption of correctness of the state court determinations, nor do his submissions establish that a fundamental miscarriage of justice occurred in his criminal case, and the Indiana Court of Appeals correctly concluded that the issues Calligan's appellate counsel did not raise on direct

appeal would not have resulted in a reversal of the conviction or an order for a new trial.

For the foregoing reasons, the court DENIES this petition.

**SO ORDERED**.

ENTERED: July 3, 2007.

                                        s/Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT